UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARMANDO COLON,

                Plaintiff,

-against-

ANTHONY J. ANNUCCI, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

17-CV-04445 (PMH)

PHILIP M. HALPERN, United States District Judge:

Armando Colon ("Plaintiff") brings this action under 42 U.S.C. § 1983 against various employees of the New York State Department of Corrections and Community Supervision ("DOCCS") in connection with his incarceration at Sullivan Correctional Facility ("Sullivan") in Fallsburg, New York. (Doc. 2, "Compl.").

Plaintiff initiated this action as a *pro se* litigant by way of a Complaint docketed on June 12, 2017. (*Id.*). At that time, this action proceeded against nine individuals: (1) Commissioner Anthony J. Annucci; (2) Deputy Commissioner Joseph Bellnier; (3) Director Donald Venettozzi; (4) Superintendent William F. Keyser ("Keyser"); (5) Deputy Superintendent Henry Moore; (6) Hearing Officer Anthony Polizzi; (7) Lieutenant Wayne Jordan ("Jordan"); (8) Correction Officer Kurtis Holzapfel ("Holzapfel"); and (9) Deputy Superintendent Edward Burnett ("Burnett," and collectively, "Defendants"). (*Id.* at 1).[1]

Judge Kenneth M. Karas—before whom this matter proceeded prior to its transfer to this Court on April 16, 2020—in a September 28, 2018 Opinion and Order, dismissed all claims against all Defendants without prejudice "except for the due process claim relating to Burnett's

---

[1] Citations to the Complaint correspond to the pagination generated by ECF.

involvement in the Administrative Segregation review process." (Doc. 57 at 43).[2] Notwithstanding his conclusions, Judge Karas gave Plaintiff thirty days to amend the Complaint and cure the dismissed claims. (*Id*. at 44). Judge Karas warned, however, that "[i]f Plaintiff fails to abide by the 30-day deadline, this action could be dismissed with prejudice." (*Id*.). Plaintiff did not file an amended pleading and, on November 6, 2018, Judge Karas issued an Order of Partial Dismissal directing that all claims dismissed in the Opinion and Order be "dismissed with prejudice." (Doc. 61 at 2). Defendant filed his Answer on December 21, 2018 (Doc. 64), Judge Karas entered a discovery schedule on December 24, 2018 (Doc. 66), and Michael E. Talassazan ("Talassazan") entered an appearance on Plaintiff's behalf on December 30, 2018 (Doc. 67).

On June 15, 2020, counsel for Defendant filed a letter informing the Court that they believed discovery was complete, but that they were unable to confirm their understanding with Talassazan. (Doc. 87). On June 22, 2020, the Court directed Talassazan to file a letter providing his position on the status of discovery by June 29, 2020. (Doc. 88). Having received no response, on July 1, 2020, the Court scheduled a telephonic Case Management Conference for July 23, 2020. (Doc. 89). Three days before that conference, July 20, 2020, Talassazan filed a letter stating that discovery was complete and that the case was ready for trial. (Doc. 93). The Court held the conference scheduled for July 23, 2020; counsel for Defendant appeared, but Talassazan failed to do so. (July 23, 2020 Min. Entry). As such, the Court rescheduled the Case Management Conference for July 30, 2020. (*Id*.). Talassazan filed a letter later that same day explaining that he missed the conference because he "had a family emergency with an ill family member." (Doc. 94).

Counsel for both parties appeared telephonically for the July 30, 2020 conference and, at that conference, the Court set the dates by which the parties would exchange their Statements of

---

[2] Judge Karas' Opinion and Order was published in the Federal Supplement. *See Colon v. Annucci*, 344 F. Supp. 3d 612 (S.D.N.Y. 2018). Citations herein correspond to the copy of the decision filed on the docket.

Material Fact under Local Civil Rule 56.1 and Plaintiff would file his opposition to Defendant's request for a pre-motion conference to discuss an anticipated motion for summary judgment. (July 30, 2020 Min. Entry).[3] After the parties exchanged their 56.1 Statements and Plaintiff filed his opposition, on November 4, 2020, the Court held a pre-motion telephone conference to discuss Defendant's anticipated motion for summary judgment. (Nov. 4, 2020 Min. Entry). During that conference, the Court directed Talassazan to revise the opposition to Defendant's 56.1 Statement by November 11, 2020 and set a briefing schedule for Defendant's motion. (*Id.*). Under that schedule, all motion papers were to be filed on January 11, 2021. (*Id.*).

Defendant's moving papers were filed on January 11, 2021 (Doc. 106; Doc. 107) along with a letter from his counsel advising:

> To date, Plaintiff has neither submitted an opposition nor requested an extension of time. On January 8, 2021, I also sent an email to Plaintiff's Counsel asking whether he intends to serve any opposition papers to Defendant's motion for summary judgment, and received no response back.

(Doc. 108). In that letter, "Defendant . . . request[ed] that the Court dismiss this case for failure to prosecute or consider the motion fully submitted . . . ." (*Id.*). There was no activity on the docket until Talassazan filed a letter on April 27, 2021—almost four months later—providing, in full:

> I sincerely apologize for the delay in contacting the Court regarding this matter. I have tendered my resignation to the Grievance Committee and the Second Department. I will no longer be able to practice law once said resignation is finalized by the Court.
>
> I respectfully request that the Court give the plaintiff sufficient time to secure new counsel. I am also doing my best to assist Mr. Colon in finding new counsel.

(Doc. 109).

---

[3] Defendant had filed his letter requesting a pre-motion conference concerning an anticipated motion for summary judgment more than a year prior, on June 7, 2019. (Doc. 77).

On May 24, 2021, the Court endorsed Talassazan's letter: (1) directing Talassazan "to file a letter by 5:00 p.m. tomorrow, May 25, 2021, providing the Court with an update as to his efforts to assist Plaintiff in retaining new counsel;" (2) extending, *sua sponte*, the deadline by which Plaintiff had to file his opposition to the motion for summary judgment to June 25, 2021; and (3) ordering Talassazan to serve a copy of that Order on Plaintiff and file proof of service on the docket. (Doc. 110). That Order also noted specifically that Talassazan "remains the attorney of record for Plaintiff in this matter" as he had not been relieved under Local Civil Rule 1.4, and that the Court would deem the motion unopposed if Plaintiff failed to serve and file opposition papers by June 25, 2021. (*Id.*). On July 15, 2021, having received no word from Plaintiff or Talassazan, counsel for Defendant asked that the Court deem the "motion for summary judgment fully briefed and submitted." (Doc. 111). At this juncture, in light of the foregoing, the Court deems the motion for summary judgment fully submitted and ripe for adjudication. The Court will, however, consider the arguments offered in the October 21, 2020 letter opposing Defendant's request for a pre-motion conference as well as Plaintiff's detailed Response to Defendant's Rule 56.1 Statement (Doc. 103, "Opp. Ltr."; Doc. 104, "Pl. 56.1 Stmt. Resp.").

For the reasons set forth below, the motion is GRANTED.

## **BACKGROUND**

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion, and draws them from the Complaint, Plaintiff's Response to Defendant's Rule 56.1 Statement, the Declaration of Edward Burnett (Doc. 96, "Burnett Decl.") together with the exhibits annexed thereto, and the Declaration of Amanda Yoon (Doc. 97, "Yoon Decl.") together with the exhibits annexed thereto.

The grudge underlying this action began in January 2016 when, according to Plaintiff, Holzapfel searched Plaintiff's cell and confiscated a photograph of his wife in lingerie. (Pl. 56.1

Stmt. Resp. ¶ 7; *see also* Burnett Decl. Ex. A at 1; Yoon Decl. Ex. A at 42-43). Plaintiff claims that, after Holzapfel seized the photograph, other inmates told him that Holzapfel posted the photograph in a public place. (Pl. 56.1 Stmt. Resp. ¶ 7; *see also* Yoon Decl. Ex. A at 44-47).

Shortly thereafter, on February 1, 2016, Holzapfel issued an Inmate Misbehavior Report charging Plaintiff with "102.10 Making Threats and 107.11 Harassment." (Pl. 56.1 Stmt. Resp. ¶ 10; *see also id*. ¶ 9; Burnett Decl. Ex. A at 1). That narrative provides that, on that date:

> Inmate Colon 82A3397 . . . called me to his gate saying he had something important to speak to me about. I approached the . . . cell and he stated, "You crossed the line by taking that picture of my wife motherfucker!" . . . . Inmate Colon continued saying, "One day, when you least expect it, I'm gonna take you out!"

(Burnett Decl. Ex. A at 1). Plaintiff was found guilty of the charges associated with that incident after a disciplinary hearing and sentenced to thirty days in keeplock confinement. (Pl. 56.1 Stmt. Resp. ¶ 11; *see also* Burnett Decl. ¶ 8; Yoon Decl. Ex. A at 63).

On March 3, 2016, while Plaintiff was in keeplock, Holzapfel issued another Inmate Misbehavior Report describing yet another clash with Plaintiff during which Plaintiff threatened him. (Pl. 56.1 Stmt. Resp. ¶ 12; *see also* Burnett Decl. Ex. A at 2). Holzapfel documented:

> Inmate Colon became irrate and started screaming, causing my porters to stop work and take notice. Inmate Colon was screaming, "because this motherfucker here wants to fuck with me! He don't know who he's fucking with!" Pointing toward me, and yelled, "believe me you don't want this problem, it's coming!" I asked the Inmate, "whats coming?" He replied, "You know what's coming!"

(Burnett Decl. Ex. A at 2). Plaintiff was charged with "107.11 Harassment, 102.10 Threats, and 104.13 Creat[ing a] Disturbance" following that incident. (Pl. 56.1 Stmt. Resp. ¶ 14; *see also* Burnett Decl. Ex. A at 2). A disciplinary hearing was convened and, as a result, Plaintiff was sentenced to sixty days in the Special Housing Unit ("SHU"). (Pl. 56.1 Stmt. Resp. ¶ 15; *see also* Burnett Decl. ¶ 8).

5

Five days before Plaintiff's release from the SHU, on May 11, 2016, Lieutenant Maxwell ("Maxwell") wrote to Keyser and expressed concern about Holzapfel's safety in light of Plaintiff's imminent release from the SHU. (Pl. 56.1 Stmt. Resp. ¶¶ 16-18; *see also* Yoon Decl. Ex. B; Doc. 107-1).[4] Maxwell explained:

> I have had two separate confidential sources speak to me about . . . Colon. Inmate Colon hates Officer Holzapfel and has openly threatened him in the past. One of these confidential sources stated to me that if Colon is released from SHU, he will cut . . . Holzapfel's face or kill him or have another inmate do this. He further stated that this inmate is very dangerous and should be taken seriously.
>
> The second confidential source also stated he heard . . . Colon threatening to stab . . . Holzapfel and that . . . Colon hated him. He also stated that this inmate could make a weapon very easily and that he often had one.

(Doc. 107-1). The following day, May 12, 2016, Jordan wrote a similar memorandum to Keyser advising him that Plaintiff declared during a February 16, 2016 hearing "that if he saw CO Holzapfel on the street he would take him out." (Pl. 56.1 Stmt. Resp. ¶ 19; Yoon Decl. Ex. C).

In the wake of these reports, on May 16, 2016—the date on which Plaintiff was scheduled to be released from the SHU—Captain Sipple ("Sipple") completed a form recommending that Plaintiff be placed in Administrative Segregation ("Ad Seg"). (Pl. 56.1 Stmt. Resp. ¶¶ 20-22; *see also* Burnett Decl. ¶ 9; Burnett Decl. Ex. B; Yoon Decl. Ex. A at 102-03). Sipple detailed his reasons for the recommendation in that memorandum:

> I have received further information from several security supervisors who have confirmed thru confidential sources that Inmate Colon has made threats towards Officer Holzapfel and has been actively attempting to acquire a weapon to use to assault him.

---

[4] Counsel for Defendant filed both the Burnett Declaration and the Yoon Declaration in October 2020 when she filed Defendant's Rule 56.1 Statement in Support of Motion for Summary Judgment. (*See* Doc. 95; Doc. 96; Doc. 97). When she served the Notice of Motion and Memorandum of Law in Support thereof, she served also an unredacted copy of Exhibit B to the Yoon Declaration. (Doc. 105). The Court cites directly to the unredacted copy of that document, docketed at Doc. 107-1, as opposed to "Yoon Decl. Ex. B," to avoid confusion.

> Inmate Colon has a long disciplinary history of weapons possessions and I believe to release him into the facility general population would place Officer Holzapfel's life and wellbeing in jeopardy.

(Burnett Decl. Ex. B).

Plaintiff was placed in Ad Seg pending a determination on the recommendation's merits. (*Id*.). Keyser assigned Defendant to conduct the Ad Seg hearing. (Pl. 56.1 Stmt. Resp. ¶ 23; *see also* Burnett Decl. ¶ 10; Burnett Decl. Ex. C). Burnett held the hearing in May and June 2016. (Pl. 56.1 Stmt. Resp. ¶¶ 24-39; *see also* Burnett Decl. ¶¶ 10-15; Burnett Decl. Ex. C). At the end of the hearing, Defendant concluded "that Plaintiff should be placed in Ad Seg because the relationship between Plaintiff and . . . Holzapfel had deteriorated to such a degree that . . . Holzapfel's life would be in jeopardy . . . if Plaintiff were to be released to general population." (Pl. 56.1 Stmt. Resp. ¶ 40; *see also* Burnett Decl. ¶ 16; Burnett Decl. Ex. C at DEF 0121-0122; Burnett Decl. Ex. D). The decision was affirmed on appeal. (Pl. 56.1 Stmt. Resp. ¶¶ 41-42; Burnett Decl. ¶ 17; Burnett Decl. Ex. E).

Following the hearing, Burnett—as part of a three-member committee—periodically reviewed Plaintiff's placement in Ad Seg in accordance with N.Y. Comp. Codes R. & Regs, tit. 7, § 301.4. (Pl. 56.1 Stmt. Resp. ¶¶ 44, 47; *see also* Burnett Decl. ¶¶ 19-24; Burnett Decl. Ex. F; Burnett Decl. Ex. G; Burnett Decl. Ex. H; Burnett Decl. Ex. I). The committee issued reports concluding that Plaintiff remained a threat to Holzapfel and recommending that Plaintiff remain in Ad Seg on four occasions: (1) August 16, 2016; (2) October 4, 2016; (3) December 6, 2016; and (4) February 1, 2017. (Pl. 56.1 Stmt. Resp. ¶¶ 48-49, 51, 53, 55; *see also* Burnett Decl. ¶¶ 20-24; Burnett Decl. Ex. F; Burnett Decl. Ex. G; Burnett Decl. Ex. H; Burnett Decl. Ex. I). These recommendations were, in turn, adopted by Keyser, who agreed that Plaintiff should remain in Ad

7

Seg. (Pl. 56.1 Stmt. Resp. ¶¶ 50, 52, 54, 56; *see also* Burnett Decl. ¶¶ 21-24; Burnett Decl. Ex. F; Burnett Decl. Ex. G; Burnett Decl. Ex. H; Burnett Decl. Ex. I).

Plaintiff was released from Ad Seg on February 23, 2017, the day Holzapfel was transferred out of Sullivan. (Pl. 56.1 Stmt. Resp. ¶ 57; *see also* Burnett Decl. ¶ 25; Yoon Decl. Ex. A at 117). At the end of the ordeal, Plaintiff had been housed in Ad Seg—physically located in the SHU—from May 16, 2016 to February 23, 2017, approximately 283 days. (Pl. 56.1 Stmt. Resp. ¶ 58; Yoon Decl. Ex. A at 116). This litigation followed.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id*. (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence; the task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial . . . ." *Bellotto v. Cty. of Orange*,

248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). Claims simply cannot proceed in the absence of sufficient proof as to an essential element.

"It is the movant's burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), and a court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id*. (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts . . . ." *Id*. (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, "[i]f there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must establish also its "entitlement to judgment as a matter of law." *In re Davis New York Venture Fund Fee Litig.*, 805 F. App'x 79, 80 (2d Cir. 2020) (quoting *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134, 140 (2d Cir. 2019)). Stated simply, the movant must establish that the law favors the judgment sought. *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (explaining "that summary judgment is appropriate only when . . . law supports the moving party"); *Linares v. City of White Plains*, 773 F. Supp. 559, 560 (S.D.N.Y. 1991) (explaining that summary judgment is

appropriate when "the law so favors the moving party that entry of judgment in favor of the movant dismissing the complaint is proper").

The fact that Plaintiff failed to file opposition to Defendant's motion does not excuse Defendant from carrying his burden as the movant. As explained by the Second Circuit:

> [W]hen a party, whether *pro se* or counseled, fails to respond to an opponent's motion for summary judgment, a district court may not enter a default judgment. Rather, it must examine the movant's statement of undisputed facts and the proffered record support and determine whether the movant is entitled to summary judgment.

*Jackson v. Fed. Exp.*, 766 F.3d 189, 197 (2d Cir. 2014); *see also Vermont Teddy Bear Co.*, 373 F.3d at 244 (declaring that "[w]here the non-moving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains" (internal quotation marks omitted)).

## **ANALYSIS**

Following Judge Karas' decision, the only claim for relief left is the procedural "due process claim relating to Burnett's involvement in the Administrative Segregation review process." (Doc. 57 at 43). Defendant argues here that summary judgment is proper because there is no genuine issue of material fact and, quite simply, Plaintiff has no viable claim against him.

The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. Establishing a procedural due process claim in a prison context, by way of 42 U.S.C. § 1983, requires that a plaintiff show "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at *6 (S.D.N.Y. June 30, 2021) (internal quotation marks omitted); *see also Jackson v. Annucci*, No. 20-CV-02008, 2021 WL 2581340, at *9 (S.D.N.Y. June 23, 2021).

As to the first element of the procedural due process claim—the liberty interest—the Supreme Court provides a two-step inquiry to determine whether a liberty interest exists in connection with segregated confinement in prison:

> States may . . . create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin v. Conner*, 515 U.S. 472, 483-84 (1995) (internal citations and quotation marks omitted). As such, even if a State recognizes an applicable liberty interest, "there can be no 'violation' of procedural due process requirements unless the confinement [also] meets the atypicality standard of *Sandin*." *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999). "Factors relevant to this determination include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.'" (Doc. 57 at 24 (quoting *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004)).

It is generally accepted that the first step of the *Sandin* inquiry—here, an interest in being free from Ad Seg placement—is met by operation of New York State's statutory scheme. *Vail v. Bellnier*, No. 19-CV-00034, 2020 WL 6530752, at *6 (N.D.N.Y. June 15, 2020), *adopted sub nom. Vail v. O'Gorman*, 2020 WL 5742699 (N.D.N.Y. Sept. 25, 2020). The issue, then, is the second step; namely whether segregation imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Here, because Plaintiff was in Ad Seg for approximately 283 days, "his complaint falls within the 'intermediate' tier of analysis (*i.e.*, segregation lasting between 101 and 305 days)." *Rivera v. Royce*, No. 19-CV-10425, 2021 WL 2413396, at *10 (S.D.N.Y. June 11, 2021). Falling within this band of time means that,

11

to establish a liberty interest, "Plaintiff would also have to present facts showing that the placement imposed atypical and significant hardships." *Casanova v. Maldonado*, No. 17-CV-01466, 2021 WL 3621686, at *8 (S.D.N.Y. Aug. 16, 2021) (internal quotation marks omitted). Plaintiff's claim for relief founders on this point.

The record provides no evidence to suggest that Plaintiff was subjected to anything but ordinary SHU conditions while he was placed in Ad Seg—and simply experiencing standard SHU conditions in the intermediate tier of analysis does not, by itself, establish a protected liberty interest. *See Casanova*, 2021 WL 3621686, at *8; *see also Henry v. Dinelle*, No. 10-CV-00456, 2011 WL 5975027, at *10 (N.D.N.Y. Nov. 29, 2011) (granting summary judgment because the plaintiff "failed to adduce admissible record evidence from which a rational factfinder could conclude that the conditions . . . during this 150-day period were more severe than normal SHU conditions"). Indeed, Plaintiff offered nothing aside from conclusory statements about psychological injuries—notwithstanding the fact that Plaintiff testified also that he saw a psychiatrist while in Ad Seg and did not believe he needed assistance—and being denied privileges offered to inmates in the general population. (*See* Opp. Ltr. at 2-3; Yoon Decl. Ex. A at 138-45). Such perfunctory claims of injuries and generalized complaints of lost privileges are insufficient to establish a liberty interest at the summary judgment stage. *See, e.g.*, *Jackson v. Relf*, No. 19-CV-00193, 2021 WL 2801136, at *2 (N.D.N.Y. July 6, 2021) (explaining that Plaintiff's "conclusory statements" about the conditions of his 118 days' confinement "fail[ed] to raise a genuine dispute of material fact" as to whether the "confinement was an atypical hardship under *Sandin*"); *McEachin v. Selsky*, No. 04-CV-00083, 2010 WL 3259975, at *9 (N.D.N.Y. Mar. 30, 2010) ("It is expected that confinement in SHU will be accompanied by a loss of privileges that prisoners in the general population enjoy and such conditions fall within the expected parameters

of the sentence imposed by a court of law." (internal quotation marks omitted)), *adopted by* 2010 WL 3259982 (N.D.N.Y. Aug. 17, 2010); *see also Keyes v. Annucci*, No. 18-CV-00372, 2019 WL 4602240, at *13 (N.D.N.Y. Sept. 23, 2019) (observing that "loss of package, commissary, phone, and recreation privileges, and deprivation of access to . . . personal property" are "losses of privileges incident to the confinement of any prisoner in administrative segregation").

Consequently, the Court finds based upon the undisputed facts that Plaintiff has failed to establish a liberty interest required by the Fourteenth Amendment and *Sandin*.

Even if Plaintiff had made the two-prong showing required under *Sandin* and established a liberty interest, he failed separately to present facts suggesting that the periodic review of his Ad Seg placement was performed in a manner violative of due process. Once an inmate is placed in Ad Seg, the placement must be periodically reviewed to ensure that it "is not used as a pretext for indefinite confinement of the inmate." *Zimmerman v. Seyfert*, No. 03-CV-01389, 2007 WL 2080517, at *19 (N.D.N.Y. July 19, 2007) (citing *Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983)). When analyzing periodic reviews of continued placement in Ad Seg, there are three elements that must be met:

> [t]he review must (1) meaningfully evaluate, (2) considering recent conduct, (3) whether valid institutional safety reasons justify continued segregation.

*H'Sh aka v. O'Gorman*, 758 F. App'x 196, 199 (2d Cir. 2019) (citing *Proctor v. LeClaire*, 846 F.3d 597, 610-11 (2d Cir. 2017)). The Court does not, in this analysis, "review the substance of . . . [the] decision to confine [Plaintiff] in Ad Seg." *Proctor*, 846 F.3d at 608 (citing *Graziano v. Pataki*, 689 F.3d 110, 116 (2d Cir. 2012)). Plaintiff offers no genuine dispute as to any material fact regarding Defendant's compliance with these criteria.

When Plaintiff was placed in Ad Seg, he had already twice threatened Holzapfel directly and been the subject of reports from confidential informants. (*See* Pl. 56.1 Stmt. Resp. ¶¶ 9-22;

13

Burnett Decl. Ex. A; Burnett Decl. Ex. B; Yoon Decl. Ex. C; Doc. 107-1). Plaintiff was also, at the time of these events, designated a "Central Monitoring Case" because of his crimes, disciplinary history, and escape attempts. (Pl. 56.1 Stmt. Resp. ¶¶ 63-66).[5] Indeed, from 1982 through 2016, Plaintiff's seven-page disciplinary history reflects adjudications for threats, harassment, contraband, smuggling, fighting, weapons, and drugs. (Burnett Decl. Ex. J). While Plaintiff conceded in his opposition to Defendant's 56.1 Statement of Material Facts that Defendant performed the review (Pl. 56.1 Stmt. Resp. ¶¶ 47-56),[6] he maintained in conclusory fashion—and without citation—in his opposition to Defendant's pre-motion letter that the review did not comport with Second Circuit precedent. (Opp. Ltr. at 1).

There are no facts in this record to suggest that Defendant failed to evaluate Plaintiff's Ad Seg placement in accordance with Second Circuit precedent. Plaintiff argues that because the committee's written reviews recommended continued confinement in Ad Seg *in haec verba*, the Court should conclude that he failed to receive the procedural process he was due. (Compl. at 46-47; Opp. Ltr. at 1; *see also* Burnett Decl. Ex. F; Burnett Decl. Ex. G; Burnett Decl. Ex. H; Burnett Decl. Ex. I). While it may have been enough to pass muster under the plausibility standard at the

---

[5] Plaintiff provided his Department Identification Number or "DIN" in his pleading (Compl. at 1). Searching Plaintiff's DIN (82-A-3397) on the DOCCS inmate lookup website, Plaintiff was convicted of, *inter alia*, Murder in the Second Degree and Robbery in the First Degree, was received by DOCCS in 1982, and was sentenced to incarceration with a maximum term of life. *Gunn v. Annucci*, No. 20-CV-02004, 2021 WL 1699949, at *8 n.4 (S.D.N.Y. Apr. 29, 2021) ("The Court may take judicial notice of Plaintiff's DOCCS inmate lookup information." (internal quotation marks omitted)). According to that website, Plaintiff was released on parole in 2018.

[6] Plaintiff's "denials" on these specific points are based on the premise that the initial underlying adjudication placing Plaintiff in Ad Seg was faulty. Any claim concerning Plaintiff's initial placement in Ad Seg was addressed—and dismissed—by Judge Karas and has nothing to do with the extant claim for relief. (Doc. 57 at 33-35; Doc. 61). These responses are, therefore, non-responsive and deemed admissions. *Marseille v. Mount Sinai Health Sys., Inc.*, No. 18-CV-12136, 2021 WL 3475620, at *1 n.2 (S.D.N.Y. Aug. 5, 2021) ("In certain instances in which either party asserted a dispute on facts set forth in the other's Local Civil Rule 56.1 Statement of Undisputed Facts, the purported objection was unresponsive to the asserted fact, and therefore, the Court deems those facts to be undisputed.").

motion to dismiss stage (Doc. 57 at 36-37 (reasoning that Plaintiff's conclusory allegations in conjunction with the recommendations stated a claim)), relying solely on that fact does not succeed at the summary judgment stage. Simply using the same language in successive reports "does not necessarily mean that the reviews were a sham." *Bellnier*, 2020 WL 6530752, at *9 (internal quotation marks omitted); *see also Giano v. Selsky*, No. 91-CV-00166, 2002 WL 31002803, at *7 (N.D.N.Y. Sept. 5, 2002) (noting that "the original reasons for placing the inmate in [administrative segregation] may be compelling" (alteration in original, internal quotation marks omitted)); *Edmonson v. Coughlin*, 21 F. Supp. 2d 242, 253 (W.D.N.Y. 1998) (concluding that memoranda "repeat[ing] the same rationale . . . is not a basis for finding" a due process violation).

In short, Defendant has established by a preponderance of the evidence that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law, both because Plaintiff has no enforceable liberty interest and Plaintiff received all the process he was due.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment is GRANTED and the complaint against Defendant is dismissed with prejudice. The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 106 and close this case.[7]

SO ORDERED:

Dated: White Plains, New York
       August 23, 2021

PHILIP M. HALPERN
United States District Judge

---

[7] Given the conclusions reached herein, the Court need not and does not address Defendant's remaining argument regarding qualified immunity.